UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTONIO QUINONES-SANTOS,

      Plaintiff,

v.                                    Case No: 8:15-cv-985-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## ORDER

      Plaintiff, Antonio Quinones-Santos, seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits, and supplemental security income.  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.  Procedural Background

      Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on March 24, 2010.  (Tr. 13.)  The Commissioner denied Plaintiff's claims both initially and upon reconsideration.  (Tr. 13.)  Plaintiff then requested an administrative hearing.  (Tr. 13.)  Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified.  (Tr. 13.)  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits.  (Tr. 10–30.)  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1– 6.)

Plaintiff then filed a complaint with the U.S. District Court for the Middle District of Florida, *Quinones-Santos v. Commissioner of Social Security*, No. 8:13-cv-01840-GJK. (Tr. 738–744.) Upon review, the Commissioner's decision was reversed, and the case was remanded to the Commissioner for further proceedings. (Tr. 736, 738–744, 745–749.) After a hearing, at which Plaintiff appeared and testified, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 656–672.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B. Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1962, claimed disability beginning on January 1, 2008. (Tr. 659, 671.) Plaintiff has a high school education, having obtained a GED, and maintains a commercial driver's license. (Tr. 671, 689, 696.) Plaintiff's past relevant work experience included work as a cement truck driver, welder, appliance deliverer/installer, and carpet cleaner. (Tr. 671.) Plaintiff alleged disability due to hepatitis C, bursitis in both shoulders with a tear in the left shoulder, osteoarthritis, insomnia, depression, and chronic obstructive pulmonary disease ("COPD"). (Tr. 956.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since January 1, 2008, the alleged onset date. (Tr. 661.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: bilateral arthritis of the shoulders, left index distal fingertip amputation, carpal tunnel syndrome, asthma, history of hepatitis C, and depression with antisocial personality disorder. (Tr. 661.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 662.)

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, including lifting up to twenty pounds occasionally and up to ten pounds frequently; standing or walking for about six hours in a workday and sitting for up to six hours in a workday with normal breaks; and understanding, remembering, carrying out, and performing simple and detailed (all but complex) tasks and instructions. (Tr. 664.) However, the ALJ limited Plaintiff to the following: never climb ladders of six or more steps, ropes, or scaffolds; occasional climbing of ladders of less than six steps, ramps, or stairs; no more than occasional crawling and no more than frequent balancing, stooping, kneeling, and crouching; no more than occasional reaching overhead bilaterally and no more than frequent reaching bilaterally; no more than frequent fingering and handling bilaterally; avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, and environmental irritants such as fumes, odors, dusts, gases, poorly ventilated areas, and open chemicals; avoid even moderate exposure to industrial hazards such as the personal use of hazardous or moving industrial machinery and unprotected heights; and no more than occasional or superficial interaction with the general public and coworkers. (Tr. 664.)

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 666.) Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 671.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs

existing in significant numbers in the national economy, such as an office helper, small products assembler, and housekeeper/cleaner.  (Tr. 672.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 672.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled or not disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in

the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the basis that the ALJ improperly substituted his opinion for that of a medical expert. Specifically, Plaintiff contends that the ALJ discounted the

- 5 -

opinions of Dr. Jorge Leal and Dr. Sujatha Borra regarding Plaintiff's limitations resulting from his carpal tunnel syndrome.  According to Plaintiff, the ALJ improperly limited Plaintiff to frequent handling and fingering rather than occasional handling and fingering despite the medical evidence suggesting that Plaintiff had continuous and longitudinal complaints of tingling, numbness, and pain in his hands.  For the reasons that follow, this contention does not warrant reversal.

Medical opinions, which include physician statements regarding the nature and severity of the claimant's impairments, may support the ALJ's determination of whether a claimant suffers from a severe impairment.  20 C.F.R. § 404.1527(a)(2).  When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  However, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his or her decision, so long as the decision is not "a broad rejection" that leaves the court with insufficient information to determine whether the ALJ considered the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  To the extent that an ALJ commits an error, the error is harmless if it did not affect the ALJ's ultimate determination.  *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983).

In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion.  *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015).  Typically, the ALJ must afford the opinion of a treating physician substantial or

considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation omitted). Good cause exists when the doctor's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion was conclusory or inconsistent with his or her own medical records. *Winschel*, 631 F.3d at 1179. Ultimately, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

At step two of the sequential evaluation process, the ALJ found that Plaintiff's carpal tunnel syndrome was a severe impairment. (Tr. 661.) However, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Tr. 662.) The ALJ then concluded that Plaintiff had the RFC to perform light work, subject to specific limitations, including "no more than frequently fingering and handling bilaterally." (Tr. 664.) In considering Plaintiff's limitations, the ALJ gave little weight to Dr. Jorge Leal's opinion that Plaintiff is limited to occasional handling, fingering, and feeling. (Tr. 669–670.) Specifically, the ALJ found that Dr. Leal's opinion was not supported by his own progress notes and the other substantive evidence of record that indicated only moderate carpal tunnel syndrome and somewhat decreased sensation. (Tr. 670.) Ultimately, the ALJ found that the limited evidence supported no more than frequent limitations in handling and fingering. (Tr. 670.)

Dr. Leal completed a Social Security form related to Plaintiff's physical ability to perform work-related activities. (Tr. 652–655.) Specifically, the form instructed Dr. Leal to check a box to indicate whether Plaintiff's physical work-related abilities were affected by his impairments and to identify and describe the factors that support the assessment of any limitations. (Tr. 652–655.) In assessing Plaintiff's manipulative functions, Dr. Leal indicated that Plaintiff's ability to reach

all directions and ability to handle were limited, while his ability to finger and ability to feel were unlimited.  (Tr. 654.)  Dr. Leal further indicated that Plaintiff could never reach, could only occasionally handle, could only occasionally finger, and could only occasionally feel.  (Tr. 654.)

Although Dr. Leal indicated that Plaintiff's manipulative functions were impaired, his conclusions are inconsistent.  For example, Dr. Leal provided that Plaintiff's ability to finger and feel were not limited ("unlimited"), but he then limited Plaintiff's ability to finger and feel to "occasionally."  (Tr. 654.)  Further, Dr. Leal did not sufficiently describe the medical or clinical findings that supported his conclusions, as his opinion consisted merely of a check-box form with no accompanying narrative or explanation of his conclusions.  (Tr. 654.)  *See Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.").  Therefore, the ALJ properly discounted Dr. Leal's opinion regarding Plaintiff's manipulative limitations to the extent that he did not adopt Dr. Leal's limitations in Plaintiff's RFC.  *See Winschel*, 631 F.3d at 1179 (providing that good cause exists to discount the opinion of a treating physician when the physician's opinion is conclusory or inconsistent with the physician's own medical records).

Further, "[a]n opinion on [a claimant's] RFC is not a medical opinion, but rather a decision reserved to the Commissioner, to be based on medical sources."  *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 664 (11th Cir. 2010) (citing 20 C.F.R. § 404.1527(e)(2)).  As such, the ALJ was required to consider Dr. Leal's opinion, but he was not required to adopt his conclusions or give special weight to his opinion.  *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 834 (11th Cir. 2011) ("A doctor's opinion on dispositive issues reserved to the Commissioner . . . is excluded from the definition of a medical opinion and is not given special weight, even if it is

offered by a treating source.").   In light of the above, the ALJ properly discounted Dr. Leal's opinion and provided adequate reasoning for doing so.

Additionally, although the evidence of record chronicles Plaintiff's complaints relating to his carpal tunnel syndrome, substantial evidence supports the ALJ's finding that Plaintiff was limited to no more than frequent handling and fingering rather than occasional handling and fingering.   In his decision, the ALJ referred to the findings of Dr. Sujatha Borra and concluded that Plaintiff's carpal tunnel syndrome supported a finding of no more than frequent limitations in handling and fingering.   (Tr. 670.)   Upon review of the medical evidence, the ALJ properly considered the medical opinions of record and articulated the basis for his conclusions.

In considering Plaintiff's carpal tunnel syndrome, the ALJ noted that Plaintiff had not reported any problems with his carpal tunnel syndrome, fingering, or handling in 2008.   (Tr. 665, 702.)   The ALJ did note, however, that Plaintiff complained of tingling and numbness in his arms and hands in 2013, but his examination yielded normal results.   (Tr. 667.)   Further, the ALJ referenced nerve conduction studies performed on Plaintiff in 2013, which showed only moderate bilateral carpal tunnel syndrome and somewhat decreased sensation in the median nerve distribution, and a negative Tinel's sign.   (Tr. 667, 1276, 1365, 1386–1387.)   Examination results in 2014 also showed only somewhat decreased sensation in the hands in the median nerve distribution.   (Tr. 667, 1494–1499.)   Based on this, the ALJ found that the limited evidence showed that Plaintiff has carpal tunnel syndrome, but it does not support Plaintiff's allegations of only being able to use his hands for less than one-third of the workday.   (Tr. 667.)

As stated by the ALJ, Dr. Borra found that Plaintiff had somewhat decreased sensory function in the hands in the median nerve distribution and diagnosed Plaintiff with carpal tunnel syndrome.   (Tr. 1275–1276.)   Dr. Borra noted that Plaintiff's initial nerve test showed borderline

carpal tunnel syndrome and recommended that Plaintiff continue taking medication.  (Tr. 1276.) In November 2013, Dr. Borra made similar findings and recommended physical therapy treatment. (Tr. 1389–1390.)  Dr. Borra further recommended that Plaintiff avoid repetitive movements of the hand and wear wrist splints.  (Tr. 1390.)  In 2014, Dr. Borra noted a right Tinel's sign and recommended that Plaintiff see a neurosurgeon for pain, but also noted Plaintiff's normal motor strength in his upper and lower extremities and intact sensory exam.  (Tr. 1494–1499.)  Notably, although Dr. Borra's progress notes recount Plaintiff's complaints of pain and include recommendations for pain management, they do not suggest any limitations more restrictive than those imposed by the ALJ or otherwise limit Plaintiff's ability to perform work-related activities, nor do they disturb the ALJ's ultimate decision.  (Tr. 1275–1277, 1386–1393, 1494–1499.)

Indeed, no other medical sources imposed any functional limitations on Plaintiff resulting from his carpal tunnel syndrome.  *See Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 989 (11th Cir. 2015) (finding that substantial evidence supported the ALJ's determination that the plaintiff was not disabled when "the record was devoid of any opinion from a treating or examining physician that [the plaintiff's impairment] imposed any functional limitations, let alone functional limitations greater than those found by the ALJ").  Nor does Plaintiff challenge the ALJ's credibility finding, which provided that Plaintiff's testimony and allegations regarding his carpal tunnel syndrome were credible only to the extent that they were compatible with his RFC assessment.  (Tr. 666.)

Additionally, the evidence of record provides ample support for the ALJ's conclusion that Plaintiff's carpal tunnel syndrome imposed no greater limitations than those imposed by the ALJ, including medical notes indicating normal range of motion in the hands and wrists, full motor power of the upper extremities and finger flexors, and no sensory abnormalities.  (Tr. 348–349,

366, 1253–1254, 1282, 1293, 1313, 1365, 1413, 1415, 1464, 1467.)  The ALJ's findings are also supported by the opinions of the state agency medical consultants, who imposed no manipulative limitations on Plaintiff as to handling, fingering, or feeling.  (Tr. 411, 509, 782, 794, 809, 823.) Even Dr. Leal's progress notes state only that Plaintiff is limited in his ability to lift heavy objects, with no stated limitation on his ability to use his hands or fingers, despite Plaintiff's reports of tingling and numbness in the hands.  (Tr. 419, 530, 539, 570, 580, 587, 592, 599, 608.)  Although some of Plaintiff's examination notes indicate that he reported pain, tingling, or numbness in his hands or wrists, other progress notes do not contain any notations or reports of pain or numbness in those areas.  (Tr. 419–424, 528–531, 537–544, 570–599, 606–613, 1168–1204, 1281, 1472, 1476, 1480, 1484, 1496, 1498.)

Similarly, the diagnosis and continued treatment of Plaintiff's carpal tunnel syndrome is not, in itself, determinative of disability, nor does it establish functional limitations resulting from the disorder.  *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").  Based on the evidence presented, the ALJ properly limited Plaintiff to light work and accounted for Plaintiff's carpal tunnel syndrome by limiting him to no more than frequent handling and fingering.  *See Davis-Grimplin v. Comm'r, Soc. Sec. Admin.*, 556 F. App'x 858, 863 (11th Cir. 2014) (affirming when "the ALJ had ample evidence on which to conclude that [the plaintiff] did not have functional limitations of her hands notwithstanding that her bilateral carpal tunnel syndrome is a severe impairment"); *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (finding that the plaintiff failed to establish that her RFC assessment was not supported by substantial evidence when she provided little evidence to support her allegations that

her alleged impairments had limited her physical functioning or work-related activities and no medical sources indicated that she had any significant functional limitations).

Therefore, upon review of the ALJ's decision and the evidence of record, the Court finds that the ALJ considered the medical evidence and properly provided the basis for his decision, and the decision is supported by substantial evidence.

**CONCLUSION**

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.  The decision of the Commissioner is **AFFIRMED**.

2.  The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on June 16, 2016.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record